IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>DELAWARE SPORTS COMPLEX, LLC,<br><br>Debtor. | Chapter 11<br>Case No. ______________________ |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 364 AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION SECURED FINANCING AND GRANTING RELATED RELIEF**

Delaware Sports Complex, LLC (the "Debtor"), debtor and debtor in possession, by its undersigned proposed attorney, files this Motion For Entry Of An Order Pursuant To 11 U.S.C. §§ 105 And 364 Authorizing The Debtor To Obtain Postpetition Secured Financing And Granting Related Relief, and in support hereof states as follows:

JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

BACKGROUND

3. On May 23, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has managed its affairs as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4. The Debtor was formed in 2015 to acquire, develop, and operate a 319.69 acre tract of land in Middletown, Delaware (the "Property") intended to include (among other things) a large outdoor and indoor sports complex and related improvements. The Debtor's interest in

the property was acquired from the Town of Middletown Delaware (the "Town") in the form of a 99-year lease pursuant to which the Debtor is obligated to make payment of $1.00 per year (the "Lease"). Pursuant to design work performed by a civil engineering firm drawn before the Debtor's lease of the Property, the Town reviewed and approved a "Major Site Plan" for 170 acres of the property in August 2015, and on or about September 29, 2015 authorized commencement of construction on a portion of its land. The Debtor executed the Lease and acquired its leasehold interest in the Property on February 24, 2016 and accepted the leased premises in its then "AS IS" condition on that date.

5. Before the Debtor executed the Lease and acquired its leasehold interest in the Property, the Town caused (or at least permitted) extensive excavation and grading work on the Property. After the Lease was executed, the Debtor, by prior management, continued construction on the Property. Eventually, six (6) outdoor full size soccer fields were built out enough to begin operations, although further additional work is needed. This represents a small fraction of the usable land on the Property.

6. In addition to the land on which athletic facilities are built or contemplated, the Property subject to the Lease also includes a park, a dog park, and related land (collectively, the "Park"), representing about 45% of the leased space. The Debtor's current principal has been told by the Town that the Park was mistakenly included in the Lease, but the Debtor's current principal was not involved in those negotiations and had no personal knowledge of the alleged mistake when he acquired his interests in the Debtor. The Debtor's management that executed the Lease on behalf of the Debtor managed the Debtor for approximately a year before selling their interests.

7. When the Debtor's current principal acquired his interests in the Debtor on or about March 1, 2017, he became aware that various contractors and engineers were asserting that they held claims against the Debtor for work done either fully or partially before the Debtor acquired an interest in the Property. One of them filed suit against the Debtor shortly before the Petition Date to recover for alleged work it performed. Moreover, the Debtor does not have copies of contracts with certain contractors and engineers and, upon information and belief, there were never any signed contracts evidencing a commercial relationship, even though the work allegedly performed is now valued in the tens—or even hundreds—of thousands of dollars. The Debtor estimates that general unsecured claims asserted against the Debtor will total over $1 million, but once these claims are adjudicated, the Debtor believes that they will be allowed in much lower amounts (and in some cases disallowed in their entirety).

8. The Debtor has virtually no cash, and while the Debtor's principal has expressed a willingness to invest limited additional capital to fund a reorganization, his willingness to do so is understandably conditioned upon an orderly restructuring, either by reorganization or sale of the Property.

9. Apparently unhappy with the progress of the Debtor's development of the Property, the Town declared a groundless default on the Lease and brought summary ejectment proceedings against the Debtor in the Justice of the Peace Court for New Castle County on March 17, 2017. The filing of the Debtor's Chapter 11 petition stayed those proceedings.

## RELIEF REQUESTED

10. By this motion, the Debtor seeks entry of an order:

A. Authorizing the Debtor to (A) obtain postpetition, secured debtor-in-possession financing in an aggregate principal amount of up to $278,750 (the "DIP Facility") pursuant to the terms and conditions of the Interim Order and the DIP Credit Agreement (as defined below) by and between

the Debtor, as borrower, and Daniel Watson (the "Lender"), and (B) incur the obligations under the DIP Credit Agreement (the "DIP Obligations") and any related agreements, documents, certificates and instruments delivered or executed from time to time in connection therewith, as amended, restated, or otherwise modified from time to time in accordance with the terms thereof and hereof, collectively, the "DIP Documents");

B. Authorizing the Debtor to execute and enter into the DIP Documents and to perform their respective obligations thereunder and such other and further acts as may be required in connection with the DIP Documents as such amounts become due and payable;

C. Subordinating the reversionary interest of the Town to the liens created by the DIP Facility in accordance with Section 7.2 of the Lease; and

D. Authorizing the Debtor to obtain credit secured by property of the estate in accordance with § 364 of the Bankruptcy Code and to give administrative priority status to the amounts borrowed in accordance with §§ 503(a) and 507(a)(2) of the Bankruptcy Code.

## GROUNDS FOR RELIEF

### I. The Proposed Financing

11. The Debtor has property of significant value, the benefit of which it hopes to maximize for the benefit of its creditors. Unfortunately, only a small portion of the Property is operational at the moment, and even with proper marketing, the Debtor could not reasonably generate enough revenue from operations to meet its ongoing obligations. The Debtor has virtually no cash on hand.

12. To fund its obligations in this reorganization, the Debtor's principal Daniel Watson has agreed to extend financing to the Debtor on a secured basis on terms that are believed to be much more competitive than any financing available in the traditional markets. This financing would be interest-free, not subject to any fees or charges, and accessible to the Debtor in accordance with an agreed budget. Mr. Watson's rights in connection with this financing will be protected by an administrative claim and a lien on all of the Debtor's assets,

and there will be no roll-up of any prepetition obligations. A form of agreement memorializing these terms is attached hereto as **Exhibit A** (the "DIP Credit Agreement").

13. Because there are no employees and only nominal operational expenses, the Debtor does not project significant expenses in this case. The Debtor does require some maintenance in connection with the Property for its ongoing operations. The main expenses that the Debtor expects to incur in this case are professional fees and statutory fees owing to the United States Trustee. Due to the cost of filing subsequent motions, the Debtor proposes an 18-month budget.

14. The Debtor is not aware of any party that may assert a claim secured by assets of the Debtor, and therefore, there are no issues about obtaining priority over other secured claims.

15. Given the amount in question and the favorable terms offered by Mr. Watson, the Debtor is confident that it would be unable to match, much less beat, such terms through financing from an outside lender. It is axiomatic that institutional lenders would seek a reasonable rate of interest as compensation for the value and risk of a loan, and most lenders would be expected to require the Debtor to pay fees and other charges. Because the proposed financing by Mr. Watson does not require the payment of fees or charges, the Debtor has not attempted to shop the loan around.

16. Consistent with the disclosure requirements of Fed. R. Bankr. P. 4001 and Del. Bankr.LR 4001-2(b), the following table summarizes the significant terms of the DIP Facility and the Interim Order:[1]

[1] This summary, including the use of defined terms herein (whether or not defined within the summary), is qualified in its entirety by the provisions of the DIP Documents and the Interim Order, as applicable. To the extent there are any conflicts between this summary, on the one hand, and any DIP Document or the Interim Order, as applicable, on the other, the terms of such DIP Document or the Interim Order, as applicable, shall govern.

| Summary of Relevant Provisions | |
|---|---|
| **Material Terms** | **DIP Facility** |
| **Borrower** | Delaware Sports Complex, LLC, debtor in possession |
| **Lender** | Daniel Watson |
| **Purpose and Limitation on Use of Proceeds** | Proceeds of the loans shall be used to fund the Debtor's postpetition obligations in accordance with the budget attached to the proposed order as Exhibit A. |
| **Security** | A first-priority lien on all assets of the Debtor |
| **Interest Rate** | None. |
| **Maturity Date** | Unless otherwise agreed by Mr. Watson, the DIP Financing shall be repayable upon the earliest of (a) 5 days after a written demand for repayment is filed by Mr. Watson with the Court and served upon the Debtor and the Debtor's attorney, (b) entry of an order dismissing this case or converting this case to a case under Chapter 7, and (c) the occurrence of the effective date under a confirmed plan in this case. |
| **Fees** | None, except that (1) Lender's legal fees for preparation of the Post Petition Credit Agreement, not to exceed $1000, and (2) any amounts necessary or appropriate, in Lender's sole discretion, to perfect its interests hereunder (including but not limited to Lender's legal fees associated with preparation of related documents and fees for the recordation of a UCC-1 financing statement and/or mortgage instrument and related Subordination and Non-Disturbance Agreements) will be deemed advances to the Debtor and must be repaid. |
| **Conditions Precedent to Lending** | None. |
| **Priority of Claims** | The obligations under the DIP Facility will constitute administrative claims, *pari passu* with other administrative claims in this case except voluntarily subordinated to any claims of the Debtor's professionals. |
| **Provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors** | None. |

| | |
|---|---|
| **Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters** | The proposed relief includes a provision waiving claims against Mr. Watson except for actions brought within 45 days after entry of the Final Order, along with certain protections to Mr. Watson in the event any such actions may be brought. |
| **Provisions that seek to waive, without notice, whatever rights the estate may have under 11 U.S.C. § 506(c)** | None. |
| **Provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549** | The proposed order contains a provision immediately granting to Mr. Watson liens on all of the Debtor's causes of action arising under Chapter 5 of the Bankruptcy Code, to secure his claims under the DIP Credit Facility. |
| **Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b)** | None. |

| | |
|---|---|
| **Provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out** | None. |
| **Provisions that prime any secured lien without the consent of that lienor.** | None, except that the reversionary interest of the Town in the Property shall be subordinated to the liens created by the DIP Facility in accordance with Section 7.2 of the Lease. |
| **Provisions that seek to affect the Court's power to consider the equities of the case under 11 U.S.C. § 552(b)(1)** | None. |

17. Given the current state of the Debtor's financial affairs, the Debtor does not believe that it could possibly obtain financing on better terms. The only cost to the Debtor of the proposed financing is the waiver and transfer of certain claims by the Debtor to Mr. Watson, which he indicated he would require so that he does not finance a successful sale or reorganization of the Debtor's assets and afterwards be attacked by another representative of the estate. The Debtor is not aware of any facts that might give rise to a claim against Mr. Watson, so it is unclear whether the proposed waiver would have any effect on the estate.[2]

18. The Debtor does not believe that the economics of the case will support an Official Committee Of Unsecured Creditors (the "Committee") and/or other committees in this case.

19. The Debtor qualifies for relief under § 364 of the Bankruptcy Code, which provides, in relevant part:

[2] Mr. Watson received a single payment from the Debtor before the Petition Date, in the amount of $5,326, which is below the $6,425 minimum for avoidance as a preferential transfer in accordance with § 547(c)(9) of the Bankruptcy Code.

> (b) [t]he Court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this Section, allowable under Section 503(b)(1) of this title as an administrative expense.
>
> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> * * *
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

11 U.S.C. § 364.

**A. <u>Alternative Financing Is Not Available to the Debtor</u>.**

20. While the Debtor has not shopped for any other loan, the Debtor respectfully submits that it could not possibly obtain financing on terms more favorable than the DIP Facility. The economic reality is that no potential lender would loan money to the Debtor to pay administrative claims without requiring security, interest, and fees. The Debtor does not believe that it has assets that would provide the security and liquidity to a third-party lender in order to obtain the financing provided in the DIP Facility. Most lenders use fees and charges to generate their profit, and this loan has none of those. Furthermore, in light of the economics of this case, most lenders require a more substantial borrowing than the amounts the Debtor is seeking in financing, in order for lenders to justify the risk and value of advances to be made. Accordingly, the Debtor respectfully submits that the DIP Facility is the best available postpetition financing for the Debtor.

**B. The Terms of the DIP Facility are Fair, Reasonable, and Adequate under the Circumstances.**

21. In considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and potential

lender. *In re Farmland Indus., Inc.,* 294 B.R. 855, 886 (Bankr. W.D. Mo. 20013); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.),* 65 B.R. 358, 365 (W.D. Mich. 1986) (a debtor may have to enter into hard bargains to acquire funds).

22. The Debtor believes that its assets have tremendous value, but preserving that value will require a relatively small outlay of expenditures until the value can be realized either by sale or reorganization. The real property at issue is operational and may still need occasional physical care, such as mowing and routine maintenance, as well as payment of property insurance, postpetition property taxes, and the like. Even though these obligations are relatively low, if they are not met on a current basis the Debtor believes it is possible that its assets may become worthless. The terms of the DIP Facility are not only fair but represent the most cost-effective solution for meeting these ongoing obligations until such time as the Debtor may sell or reorganize its assets. The relief sought is appropriate, reasonable, and in the best interests of the Debtor, its estate, and its creditors.

### C. Entering into the DIP Facility Reflects the Debtors' Reasonable Business Judgment and Is Consistent with the Entire Fairness Doctrine.

23. Courts ordinarily view a debtor's proposed DIP loan under the business-judgment rule. *See In re All Land Investments, LLC,* No. 09-13790, 2009 WL 7226974, at *3 (Bankr. D. Del. Dec. 2, 2009) ("The terms of the proposed financing appear fair and reasonable, reflect the Debtor's exercise of prudent business judgment and are supported by reasonably equivalent value and fair consideration."); *In re QHB Holdings LLC,* No. 09-14312, 2009 WL 7226979, at *7 (Bankr. D. Del. Dec. 22, 2009.) Under the applicable business-judgment rule, courts defer to a debtor's decision to borrow money unless such decision is arbitrary and capricious. *See In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del 1994).

24. Consistent with this authority, the Debtor's decision to enter into the DIP Facility is the culmination of the Debtor's good faith efforts to procure the best available financing under the circumstances. Here, in the exercise of its business judgment, the Debtor has determined that entry into the DIP Facility is necessary to preserve the assets of its estate and is in the best interests of creditors.

25. In a transaction between the estate and an insider of the debtor, however, courts may use the more rigorous standard of the entire fairness doctrine. See *In re Los Angeles Dodgers LLC,* 457 B.R. 308, 313 (Bankr. D.Del. 2011). This test requires the Debtor to show proof of fair dealing and fair price and terms. *Id.* (citing *Moran v. Household Int'l, Inc.,* 500 A.2d 1346 (Del. Supr.1985)). Even under this more stringent standard, the Debtor is confident that the terms and price are fair and that there has been no unfair dealing. Because the proposed financing will impose no virtually no expense to the estate, it is difficult to fathom that any other source of financing could match the proposed terms, much less improve upon them.

11. The DIP Facility does not purport to prime other liens or security interests in the Debtor's assets, but it does subordinate the reversionary interest of the Town in the Property to the liens created by the DIP Facility in accordance with Section 7.2 of the Lease (the "Town Interests Subordination"). Section 364(d) permits the Court to authorize a priming lien but refers only to "property of the estate that is subject to a lien." The statute does not expressly provide (or reject) authority to incur debt secured by a lien with priority over another kind of interest in property besides a lien, however, so the Debtor must rely on other provisions of the Bankruptcy Code.

12. The Debtor asserts that the Town Interests Subordination provision is justified in accordance with §§ 105, 363, and 510 of the Bankruptcy Code. The cornerstone to this authority

is a provision in the Lease whereby the Town agreed "to execute a commercially reasonable Subordination and Non-Disturbance Agreement or similar agreement with Tenant's lender." Lease § 7.2. With this indication of consent, the Court may authorize the Town Interests Subordination under §§ 363(f) (sale of property free and clear), § 363(h) (sale of interest of non-debtor co-owner), or 510(a) (enforcing subordination agreements) of the Bankruptcy Code. In addition, because of the gap in the Bankruptcy Code's provisions regarding priming interests that are not liens, even though the proposed relief is wholly compatible with relief required by the Debtor, the Court may rely upon § 105(a) of the Bankruptcy Code. Under any of these authorities, the Court is permitted to grant the relief requested.

13. Notice of this Motion will be given to: (i) the Office of the United States Trustee; (ii) any parties who have filed requests for notice under Fed. R. Bankr. P. 2002 as of the date of service of such notice; (iii) the twenty (20) largest unsecured creditors of the Debtor at their last known addresses; and (iv) all known secured parties (of which there are presently none).

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

(A) Authorizing the Debtor to obtain postpetition financing in accordance with the terms of the DIP Credit Agreement and the proposed order submitted herewith, and

(B) Granting the Debtor such other and further relief as the Court may deem proper.

Dated: May 23, 2017
Wilmington, Delaware

Respectfully submitted,

HILLER LAW, LLC

**/s/ Adam Hiller**

Adam Hiller (DE No. 4105)
1500 North French Street, 2nd Floor
Wilmington, Delaware 19801
(302) 442-7677 telephone
ahiller@adamhillerlaw.com

*Proposed Attorney for the Debtor*